FILED
CLERK, U.S. DISTRICT COURT
10/4/2018
CENTRAL DISTRICT OF CALIFORNIA
BY: CW DEPUTY

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| HENDERSON DAN SLAUGHTER,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 2:17-cv-08190-MAA<br><br>**ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |
|---|---|

Henderson Dan Slaughter ("Plaintiff") seeks review of the final decision of the Acting Commissioner of Social Security ("Defendant," "Commissioner," or "Administration") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a United States Magistrate Judge. (ECF Nos. 11-13.) For the reasons stated below, the Court reverses the decision of the Commissioner and remands the matter for further administrative proceedings.

I. **SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On September 20, 2013, Plaintiff filed an application for SSI alleging disability beginning September 1, 2013. (Administrative Record ("AR") 177-86.)

Plaintiff alleged disability due to bipolar disorder, major depression, and a dislocated disc. (*See* AR 108.) The Administration initially denied the application on May 15, 2014. (AR 121-25.) Plaintiff sought review. (AR 127-29.) Administrative Law Judge James Moser ("ALJ") held a hearing on March 16, 2016. (*See* AR 48-72.)

The ALJ issued an unfavorable ruling on April 27, 2016. (AR 26-41.) To reach this conclusion, the ALJ applied the five-step sequential evaluation process for determining whether an individual is disabled. (AR 30-31.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 20, 2013. (AR 31.) At step two, the ALJ found that Plaintiff had medically determinable physical impairments, including disorders of the cervical and lumber spine, hypertension, diabetes mellitus, and obesity. (*Id.*)[1] But the ALJ determined that the record did not support a finding that Plaintiff had an impairment or combination of impairments that significantly limited or was expected to significantly limit Plaintiff's ability to perform basic work-related activities for twelve consecutive months. (*Id.*) Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (AR 37.)

Plaintiff requested review with the Appeals Council, which denied the request on September 18, 2017. (AR 1-7.) The Appeals Council cast the ALJ's decision of April 27, 2016 as the final decision of the Commissioner. (AR 1.)

## II. **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by

---

[1] The ALJ also recognized a medically determinable mental impairment of major depressive disorder. (AR 31.) The ALJ found that Plaintiff's mental impairment was non-severe. (AR 36.) Plaintiff does not challenge this aspect of the Commissioner's decision on appeal. (*See* ECF No. 22, at 4 (challenging consideration of medical evidence in finding that Plaintiff "did not have a severe physical impairment").)

2

substantial evidence and whether the proper legal standards were applied. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court "must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). Where evidence is susceptible of more than one rational interpretation, the Commissioner's interpretation must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## III. **DISCUSSION**

The single disputed issue is whether the ALJ properly considered the medical evidence contained in the treating opinions in determining that Plaintiff's physical impairments were non-severe at step two of the sequential evaluation process. For the reasons stated below, the Court reverses and remands for further administrative proceedings.

### A. **Legal Standard**

Decisions of the Commissioner follow a five-step sequential evaluation process. *See generally* 20 C.F.R. §§ 404.1520, 416.920. Step two of the Commissioner's sequential evaluation process requires the ALJ to determine whether an impairment is severe or not severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not

severe." An impairment or combination of impairments is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). In other words, an impairment is not severe "when medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have *no more than a minimal effect* on an individual's ability to work." *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988).

Step two involves "a de minimis screening device to dispose of groundless claims." *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). A finding of non-severity at step two must be "clearly established by medical evidence." *See Webb*, 433 F.3d at 687. If a claimant meets the evidentiary burden under step two's *de minimis* standard, the ALJ "*must* find that the impairment is 'severe' and move to the next step" in the five-step evaluation. *See Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001).

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes three types of physicians: (1) treating physicians, who treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) nonexamining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001). A treating physician's medical opinion is given "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). The weight given to a non-controlling physician's opinion depends

4

on the length and frequency of examination, the nature and extent of the treatment relationship, the evidentiary support for the opinion, consistency with the record, and the physician's specialty, among other factors. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The ALJ is obligated to evaluate all medical opinions of record, resolve conflicts in medical testimony, and analyze evidence. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Ryan*, 528 F.3d at 1198). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (quoting *Magallanes*, 881 F.2d at 751).

In rejecting a medical opinion, the ALJ must do more than state conclusions; the ALJ must set forth his or her interpretations and explain why those interpretations, rather than the doctor's, are correct. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). But the ALJ need not give weight to conclusory opinions inadequately supported by clinical findings. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

///
///
///
///
///

B.  **Background**

In reaching the conclusion that Plaintiff's physical impairments were not severe, the ALJ considered the assessments of Tyron C. Reece, M.D.,[2] general practitioner, and Myles Spar, M.D., internist. (AR 33.) The ALJ appears to consider these doctors as Plaintiff's treating physicians. (See AR 33 (referring to Dr. Spar and Dr. Reece's records as "treating records").)

The record contains four opinions from Dr. Reece. A narrative summary report of Plaintiff's condition, dated September 17, 2012, states that Plaintiff could not sit for more than ten to fifteen minutes at a time, had no range of motion in the cervical spine, had limited range of motion in the lumbar spine, and lacked the capacity "to perform any kind of physical activities." (AR 304-08.) An undated physical residual functional capacity questionnaire, believed by this Court to come from May 3, 2013,[3] states that Plaintiff had cervical and lumbar paraspinal hypertonicity and a decreased range of motion; that Plaintiff could not sit for more than fifteen minutes at a time or stand for more than ten minutes at a time; that Plaintiff had limited capability to engage in postural activities; and that Plaintiff was incapable of low-stress jobs due to constant pain. (AR 343-46.) Dr. Reece produced a medical source statement on June 11, 2014, which noted that Plaintiff could not sit or stand for more than zero to two hours in an eight-hour day, could not lift any items or engage in most postural activities, and experienced levels of pain and fatigue at the higher end of a zero to ten scale. (AR 318-21.) On December 16, 2015, Dr. Reece provided another medical source statement largely reiterating his opinions in the 2014 statement. (*See* AR 336-39.)

---

[2] The ALJ and Administration consistently misspell Dr. Reece's surname as "Reese." Dr. Reece spells his name with a C on his letterhead. (*See* AR 304.)

[3] The assessment states that the length of contact between Dr. Reece and Plaintiff was "eight months" (AR 343), and a prior assessment stated that Dr. Reece's office began treating Plaintiff on August 23, 2012 (AR 304). Dr. Reece examined Plaintiff on May 3, 2013. (*See* AR 341 (Progress Notes bearing Dr. Reece's signature).)

The record contains two opinions from Dr. Spar. On June 17, 2014, Dr. Spar penned a medical source statement opining that Plaintiff could not sit or stand for more than zero to two hours in an eight-hour day, could not lift any items or engage in most postural activities, and experienced levels of pain and fatigue of eight out of a ten-point scale. (AR 322-25.) On December 1, 2015, Dr. Spar generated a physical residual functional capacity questionnaire noting Plaintiff had an antalgic gait, received no relief with NSAIDs and was trying tramadol, frequently would experience pain severe enough to interfere with simple work tasks, and was capable of low-stress jobs. (AR 331-33.)

However, the ALJ gave "little weight" to the assessments of these treating physicians, articulating a single reason for rejecting them: "The sparse treating records in this case are inconsistent with such significant physical limitations . . . ." (AR 33.) The ALJ first noted that a "majority of the treating records" document Plaintiff's physical condition prior to the September 1, 2013 alleged disability onset date. (*Id.*) The ALJ next concluded that limitations espoused in Dr. Reece's September 17, 2012 narrative summary report "were short-lived" based on medical records from Dr. Reece and Dr. Spar in 2013. (*Id.*) The ALJ observed that medical records from a January 2013 visit with Dr. Spar showed that Plaintiff "reported '[feeling] good' with no complaints" (*id.* (alteration in original) (quoting AR 276)), and that Plaintiff's complaints of neck and back pain to Dr. Reece were accompanied by "no associated objective findings other than an unspecified degree of diminished cervical spine range of motion" (*id.* (construing AR 274, 341)).

Further, the ALJ noted conflicting findings from other medical professionals. Consulting examiner Celeste D. Emont, M.D., examined Plaintiff on April 3, 2014, and found that Plaintiff had no functional limitations. (AR 34; *see also* AR 288 ("There are no functional limitations at this time.").) State agency medical consultant J. Bradus, M.D., who reviewed medical records up to and including Dr. Emont's examination on April 3, 2014, characterized Plaintiff's physical

7

impairments as non-severe in an assessment dated May 14, 2014. (AR 34, 114.) Testifying medical expert Eric Dean Schmitter, M.D., reviewed parts of the medical record and opined at the March 16, 2016 hearing that, based on the limited information before him, there was inadequate information to determine that Plaintiff suffered a severe physical impairment. (AR 34-35, 55-59; *see also* AR 35 (noting that Dr. Schmitter did not review medical records contained in Exhibits 13F-19F (AR 336-51)).) Finally, the ALJ noted that Plaintiff "received minimal medical treatment" since Dr. Emont's April 2014 examination and that "most of the evidence from 2015 consists of unsupported medical source statements." (AR 35 (citing AR 336-40).)

The ALJ determined that evidence contained in Exhibits 13F-19F (AR 336-51), which include treatment records and medical source statements from Dr. Reece, among other documents, "did not provide additional evidence of physical impairment." (AR 35.) The ALJ also noted that "most of the evidence from 2015 consists of unsupported medical source statements." (*Id.* (citing AR 336-41).)

### C. Analysis

The ALJ did not articulate specific and legitimate reasons, supported by substantial evidence, for affording "little weight" to the medical opinions of Dr. Reece and Dr. Spar.

    1. <u>The ALJ Did Not Articulate Legally Sufficient Reasons for Rejecting Treating Records from Dr. Reece in Exhibits 13F-19F</u>

Concluding without explanation that evidence in Exhibits 13F-19F (AR 336-51) "did not provide additional evidence of physical impairment" (AR 35), the ALJ effectively dismissed Dr. Reece's 2014 and 2015 opinions and examination notes contained in Exhibits 13F-19F without a legally sufficient rationale. Among other documents, Exhibits 13F-19F contain Dr. Reece's December 16, 2015 medical

8

source statement (AR 336-39); undated (likely 2013) physical residual functional capacity questionnaire (AR 343-46); and treating notes from examinations on August 23, 2012 (AR 342), May 3, 2013 (AR 341), April 7, 2014 (AR 350-51), and December 16, 2015 (AR 349). By his cursory statement that these exhibits did not provide evidence of physical impairment, the ALJ apparently dismissed Dr. Reece's 2014 and 2015 opinions and examination records. (*See* AR 336-39, 349-51.)

      The ALJ's conclusion that Exhibits 13F-19F do not contain evidence of physical impairment is not supported by the exhibits. "The ALJ must do more than offer his conclusions." *Reddick*, 157 F.3d at 725. Why the ALJ rejected or ignored Dr. Reece's notes and opinions as not probative of physical impairment remains unexplained. The Court's review of these documents returns at least some evidence of objective clinical findings probative of physical impairment—for example, Dr. Reece's treatment notes, from April 7, 2014, demonstrate that Plaintiff presented "posterior cervical hypertoni[a]" and "paralumbar tenderness." (AR 350.) The bare conclusion the ALJ offers for his rejection of these records is not supported by the exhibits, and it is insufficient to reject the treatment notes and opinions of Dr. Reece contained therein.

      The ALJ has a duty to address all evidence that is significant and probative. *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). The ALJ's summary dismissal of Dr. Reece's notes and opinions as not providing evidence of physical impairment fails to meet the ALJ's responsibility to articulate a legally sufficient reason for his affording "little weight" to these treating physician records.

///
///
///
///
///

2. <u>The ALJ Did Not Provide Specific and Legitimate Reasons Supported by Substantial Evidence for Assigning "Little Weight" to Dr. Reece's and Dr. Spar's 2014 and 2015 Opinions</u>

The ALJ stated he assigned "little weight" to the treating physicians' assessments because the limitations stated therein were inconsistent with the sparse treating records. (AR 33.) The ALJ concluded that the record lacked sufficient objective medical evidence to support the treating physicians' opinion that Plaintiff had significant physical limitations. (*See* AR 35.) Although the ALJ recounted Dr. Reece's and Dr. Spar's opinions on Plaintiff's physical capacity in 2014 and 2015 (*see id.*), the ALJ did not discuss whether those opinions were supported by objective findings in the treating records, instead focusing on Dr. Reece's and Dr. Spar's 2012 and 2013 evaluations (*see* AR 33).[4]

Though the ALJ noted that examining and nonexamining physicians' opinions conflicted with Plaintiff's treating physicians' opinions, the ALJ did not provide specific and legitimate reasons to discount Dr. Reece's and Dr. Spar's 2014 and 2015 opinions. Contrary to the ALJ's note that "Dr. Emont's assessment . . . is the most recent comprehensive medical opinion in evidence" (AR 35), Dr. Emont's assessment is neither the latest medical examination in evidence nor the latest medical opinion by an examining or treating physician in evidence.

Dr. Spar and Dr. Reece each treated Plaintiff in mid-2014 and December 2015 and provided statements regarding Plaintiff's physical condition. (*See* AR 318-25, 331-33, 336-39.) Examination notes from Dr. Reece from 2014 and 2015 appear in the record but were not addressed in the ALJ's decision. (*See* AR 349-51.) Notably, Dr. Reece's observation of "posterior cervical hypertoni[a]" and "paralumbar tenderness," and his conclusion that Plaintiff suffered cervical and

---

[4] These opinions, in any event, are of limited relevance to the extent they predate the alleged onset date of September 2013. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1165 (9th Cir. 2008).

10

lumbar strain and radiculopathy, came only four days after Dr. Emont's independent assessment of Plaintiff's physical condition. (*Compare* AR 350-51 (dated April 7, 2014), *with* AR 284-92 (dated April 3, 2014).) Dr. Reece's observations and conclusions directly conflict with Dr. Emont's. (*See, e.g.*, AR 287 (noting "no tenderness to palpation in the midline or paraspinal areas" in Dr. Emont's assessment).)

Though the ALJ is not bound by a medical opinion on the ultimate question of disability, the ALJ is required to articulate specific and legitimate reasons for rejecting the disability findings of a treating physician's disputed medical opinion. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ did not do so with respect to the 2014 and 2015 opinions and examination notes by Plaintiff's treating physicians.

Dr. Emont's April 2014 assessment conflicts with the treating physicians' June 2014 and December 2015 conclusions, but the ALJ neglected to articulate why he resolved the conflicts in Dr. Emont's favor. The fact that the opinion by consulting examiner Dr. Emont is the latest "comprehensive" evaluation is not a legally sufficient reason for summarily rejecting later opinions and examination notes by Dr. Reece and Dr. Spar. *See Garrison*, 759 F.3d at 1012-13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

A similar issue applies to the ALJ's reliance on the opinions of the nonexamining physicians, Dr. Bradus (state agency consultant) and Dr. Schmitter (medical expert and orthopedic surgeon). The ALJ cited these as supporting his conclusions that Plaintiff's physical impairments were non-severe and that there was a lack of objective medical evidence to support significant physical limitations. (*See* AR 34-35.) But neither Dr. Bradus nor Dr. Schmitter reviewed the full record.

Dr. Bradus did not have access to medical records from Plaintiff's treating physicians after 2013 (*see* AR 112 (noting receipt of Venice Family Clinic (that is, Dr. Spar) and Dr. Reece's records on November 6, 2013)), and Dr. Schmitter admitted that he did not review the full medical record, including Dr. Reece's opinion from 2015 and examination notes from 2012 to 2015 (*see* AR 55 (stating that Dr. Schmitter reviewed Exhibits 1F through 12F)). The ALJ's reliance on these opinions, which both are predicated on an incomplete record, is insufficient to reject the conclusions of the treating physicians when considering Plaintiff's medical record in its entirety. *See Leung v. Colvin*, No. CV 13-1810-AS, 2015 U.S. Dist. LEXIS 601, at *28, 2015 WL 58722, at *9 (C.D. Cal. Jan. 5, 2015) ("Without having the benefit of reviewing *all* of Plaintiff's relevant medical records, the Court cannot conclude that [the nonexamining physician's] opinion constitutes substantial evidence . . . ."); *cf. Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985) (determining that opinions of nonexamining medical advisors who did not review the two latest examination reports regarding a progressively deteriorating condition did not constitute substantial evidence sufficient to rebut the final examination report).

    Although "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings," *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citations omitted), the ALJ's decision here fails to articulate a sufficient explanation for his summary dismissal the treating physicians' 2014 and 2015 medical opinions and examination records. The ALJ discusses the lack of objective evidence that Plaintiff's back impairments manifest in physical limitations only in pre-2014 treatment records. (*See* AR 33.) He failed to articulate legally sufficient reasons why the 2014 and 2015 treating physician opinions should be discounted. This is error. *See Garrison*, 759 F.3d at 1012-13.

///

3.  The ALJ's Conclusion that Dr. Reece's September 2012 Opinion Was Inconsistent with His Treatment Notes Is Not Supported by Substantial Evidence

The ALJ decision takes issue with perceived inconsistencies between Dr. Reece's September 2012 narrative summary report and treating medical records immediately before and after the report. (*See* AR 33.) The ALJ stated that an August 2012 examination resulted in "no remarkable objective findings," unlike the limitations stated in the September 2012 narrative summary report. (AR 33.) He also concluded that the September 2012 limitations of which Dr. Reece opined "were short-lived" given that exam notes from Dr. Spar in January 2013 stated that Plaintiff "fe[lt] good." (*Id.*)[5]

As a preliminary matter, Defendant mischaracterizes the ALJ decision. Defendant contends that "the ALJ observed that the significant limitations Dr. Reese [*sic*] opined in September 2012 directly contradicted the doctor's prior and subsequent clinical findings." (ECF No. 22, at 14.) But the ALJ decision noted only that the treating records were "*inconsistent with* . . . significant physical limitations." (AR 33 (emphasis added).) Nowhere does the ALJ state that Dr. Reece's treating notes directly contradict the doctor's September 2012 opinion. Though the line between inconsistency and contradiction is fine, the Court is "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Defendant's asserted ground of direct contradiction does not find purchase in the ALJ decision, so it is not properly reviewed here.

In any event, the treating notes are not inconsistent with Dr. Reece's September 2012 opinion. Two of the documents Defendant identifies as incongruous with Dr. Reece's September 2012 opinion (*see* ECF No. 22, at 15) are

---

[5] In context, the "feels good" note does not appear to pertain specifically to Plaintiff's back impairment. (*See* AR 276 (discussing Plaintiff's romantic life on the next several lines).) But Dr. Spar's notes suggest that Plaintiff had no complaints about his physical impairments. (*See id.* ("Ø c/o").)

13

notes from Dr. Spar, not Dr. Reece. (*See* AR 276-77 (treatment notes from January 2013), 273-74 (treatment notes from April 2013[6]).) Moreover, contrary to the ALJ's observation, Dr. Reece's August 2012 treatment notes do not state that Plaintiff "showed full strength in the lower extremities." (AR 33; *see* AR 342 (leaving blank a checkbox adopting the "normal exam" parameters of "NO C/C/E, B UE'S + LE'S STRENGTH 5/5" while checking other boxes).) Instead, the August 2012 treatment notes identify Plaintiff's bilateral radiculopathy in the lumbar spine as well as cervical and myofascial strain. (*See* AR 342.) Dr. Reece's treating notes after September 2012 also are not inconsistent with his opinion. (*See, e.g.*, AR 341 (noting cervical and lumbar strain and radiculopathy in May 2013), 350-51 (noting paralumbar tenderness, posterior cervical hypertonia, and cervical and lumbar strain and radiculopathy in April 2014).)

Inconsistency between clinical examination findings and a physician's opinion is a specific and legitimate reason to reject a treating physician's opinion, *See Tommasetti*, 533 F.3d at 1041 (rejecting physician's medical opinion that was incongruous with physician's medical records, which "largely reflect[ed the claimant's] reports of pain, with little independent analysis or diagnosis"). However, it is unreasonable to conclude that Dr. Reece's consistent findings of cervical and lumbar strain and radiculopathy in his examination records from 2012 to 2015 (*see, e.g.*, AR 305, 341-42, 351) are incompatible with his findings of physical limitations in his assessments. Neither the ALJ nor Defendant identifies an actual contradiction or inconsistency between Dr. Reece's examination findings and his September 2012 opinion. Consequently, the ALJ's assignment of little

///

---

[6] Defendant states that this examination took place in July 2013. (ECF No. 22, at 15.) The document, apparently from April 2013, seems to set a future appointment for July to refill medications. (*See* AR 274 (giving "7/23/13" for "Internal" "Appt: Ref"); *see also* AR 270 (encounter note for medication refills dated August 13, 2013, three weeks after the date given in the April note).)

weight to Dr. Reece's September 2012 medical opinion is not supported by substantial evidence.

### 4. The Commissioner Identified Other Grounds for Rejecting the Treating Opinions that Are Not Grounds Asserted by the ALJ

Defendant identifies three other grounds the ALJ purportedly articulated for rejecting the treating opinions: (1) the treating opinions were inconsistent with minimal and effective treatment, (2) the ALJ permissibly afforded greater weight to Dr. Emont and Dr. Bradus's opinions, and (3) the ALJ permissibly afforded greater weight to Dr. Schmitter's opinion. (ECF No. 22, at 15-17.)

The Court declines to address the latter two points because they fall outside of the scope of Plaintiff's appeal, which seeks reversal due to the consideration and rejection of the *treating physicians'* opinions. (*See id.* at 4.) That the ALJ afforded greater weight to the non-treating physician opinions is relevant to the ALJ's assessment of the medical opinions, but irrelevant to his assignment of little weight to the treating opinions, except to the extent he used these opinions to establish that the treating opinions were contradicted.

On the other hand, the ALJ did not articulate that he rejected the treating opinions due to Plaintiff's "minimal and effective treatment." The ALJ observed that "the claimant has received minimal medical treatment since" Dr. Emont's assessment. (AR 35.) He did not connect this observation with his rejection of the opinions of Dr. Reece and Dr. Spar. Although the ALJ need not "recite the magic words" to reject a medical opinion, see *Magallanes*, 881 F.2d at 755, here the ALJ did not establish a logical connection from which the Court may infer that Plaintiff's lack of medical treatment informed the credit the ALJ gave to the treating physician opinions. The Court is confined to review only the reasons the ALJ provides. *Connett*, 340 F.3d at 874. This reason is not within the scope of this Court's review.

Even if this were a reason the ALJ articulated, however, it is not supported by substantial evidence. (AR 35; *see also* ECF No. 22 (arguing that the ALJ discounted the opinions as inconsistent with minimal and effective treatment).) This conclusion is not supported by the record, which shows that Plaintiff sought medical examination with treating physicians for his physical impairments at least five times after Dr. Emont's examination. (*See, e.g.*, AR 318-25, 331-33, 336-39, 349-51.) Dr. Spar noted in his 2014 opinion that Plaintiff received no pain relief from NSAIDs and that he is trying tramadol, an opioid analgesic. (*See* AR 332.) These aspects of Plaintiff's medical history are not consistent with conservative treatment. *See Driskell v. Berryhill*, No. EDCV 16-2534-KK, 2017 U.S. Dist. LEXIS 142278, at *15-16, 2017 WL 3841805, at *6 (C.D. Cal. Aug. 31, 2017) (collecting cases supporting the proposition that "opioid treatment prescribed for pain symptoms . . . is not considered conservative treatment"). It is unreasonable to conclude that Plaintiff's physical impairments were effectively managed by conservative treatment.

In sum, the Court determines that the ALJ's assignment of "little weight" to Dr. Reece's and Dr. Spar's medical opinions and examination notes is not supported by substantial evidence. Thus, the ALJ's conclusion at step two that Plaintiff did not have a severe physical impairment was not clearly established by the medical evidence. *See Webb*, 433 F.3d at 687.

5. <u>The Court Cannot Conclude the Errors Were Harmless</u>

The Court cannot confidently conclude that the ALJ's errors were harmless. "[W]here harmlessness is clear and not a 'borderline question,' remand for reconsideration is not appropriate," *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011), but Ninth Circuit precedents "have been cautious about when harmless error should be found." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015); *see also, e.g., Molina v. Astrue*, 674 F.3d 1104, 1115-17 (9th Cir. 2012) (reviewing the Ninth

16

Circuit's harmless error principles in the Social Security context). Here, if the ALJ were to properly credit the treating physicians' opinions and notes, he reasonably could determine that Plaintiff suffered from a severe physical impairment. With that determination, the ALJ could have reached a different disability determination. Thus, the Court is unable to conclude that the ALJ's assignment of little weight to the treating physicians' opinions was clearly harmless. Consequently, reversal is warranted. *See Marsh*, 792 F.3d at 1172-73 (reversing finding of harmless error where reviewing court could not "confidently conclude" that ALJ's failure to mention or expressly reject treating source's medical notes was harmless).

### D. Remedy

If a reviewing court determines the agency erred in reaching a decision to deny benefits and that the error was not harmless, "sentence four of § 405(g) authorizes the court to 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (alteration in original) (quoting 42 U.S.C. § 405(g)). Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citations omitted). When "the record before the agency does not support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Treichler*, 775 F.3d at 1099 (applying *Lorion* to decisions of the Administration).

Alternatively, the Court may reverse the Commissioner's decision with instructions to calculate and award benefits when "(1) the record has been fully

developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020; *see also Dominguez*, 808 F.3d at 407-08. Even if the three prongs of this "credit-as-true rule" are met, however, directing the Commissioner to award benefits is inappropriate if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Although the Court has found that the ALJ's decision is not supported by substantial evidence, essential factual issues remain outstanding. (*Compare, e.g.,* AR 332 (opining that Plaintiff is capable of low-stress jobs), *with* AR 338-39 (opining that Plaintiff is incapable of low stress).) The disregarded treatment evidence raises factual conflicts about Plaintiff's level of functioning that "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015). Moreover, further administrative proceedings would serve the purpose of establishing Plaintiff's residual functional capacity, which is a role reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d)(2) (reserving "the final responsibility for deciding" residual functional capacity to the Commissioner); *Dominguez*, 808 F.3d at 409 (9th Cir. 2015) ("[I]t is up to the ALJ, not the court, to determine how these impairments affect the formulation of [the claimant's] RFC.").

Based on its review and consideration of the entire record, the Court concludes that a remand on an open record for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) is warranted. The Court does not intend to limit the scope of the remand.

///

## IV. CONCLUSION

The Court ORDERS that judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings.

IT IS SO ORDERED.

DATED: October 4, 2018

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE